IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**JAMES DEWEY KING,**

    Petitioner,

v.                                                            Civil Action No. **3:19CV41**

**HAROLD W. CLARKE,**

    Respondent.

**REPORT AND RECOMMENDATION**

James Dewey King, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this petition for habeas corpus under 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 1).[1] King claims that the evidence was insufficient to support his convictions. (§ 2254 Pet. 5; ECF No. 1–6, at 5.) Respondent has moved to dismiss. (ECF No. 14.) The matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). For the reasons that follow, it is RECOMMENDED that the § 2254 Petition be DENIED because King's claim lacks merit.

**A.     Pertinent State Procedural History**

King was convicted in the Circuit Court of the County of Henrico ("Circuit Court") of arson of an occupied dwelling and violating a protective order. (ECF No. 12–1, at 1.) King appealed his convictions and argued "that the evidence failed to prove he was the criminal agent of the fire and that he knew the victim was home . . . .'" (*Id.*) The Court of Appeals of Virginia denied King's petition for appeal. (*Id.*) King appealed to the Supreme Court of Virginia, which refused his petition for appeal. (ECF No. 12–2, at 1.)

Thereafter, King filed a petition for a writ of habeas corpus with the Supreme Court of Virginia wherein he claimed that, *inter alia*, he was denied effective assistance of counsel because

---

[1] The Court employs the pagination assigned to parties' submissions by the CM/ECF docketing system. The Court corrects the punctuation, capitalization, and spelling in any documents filed by the parties.

counsel refused to allow King to testify in his own defense. (ECF No. 12–4, at 1.) The Supreme Court of Virginia referred the foregoing claim to the Circuit Court to conduct an evidentiary hearing. (ECF No. 12–3, at 2.) After the evidentiary hearing the Circuit Court concluded that counsel

> did not refuse to call Petitioner to testify at his criminal trial, despite Petitioner's insistence that he desired to testify.
> Alternatively, even if Petitioner was indeed denied the opportunity to testify, his lack of testimony in no way prejudiced the defense, as his testimony was not at all credible or persuasive in the eyes of the Court. If anything, the evidence presented to the Court has shown that Petitioner's purported testimony would have been incredibly prejudicial to Petitioner for its lack of credibility.

(*Id.* at 3–4.)[2] Ultimately, the Supreme Court of Virginia accepted the Circuit Court's factual findings and rejected the above claim. (ECF No. 12–4, at 1–2.)

## B. Applicable Constraints Upon Federal Habeas Review

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[2] Of course, if counsel overrides his client's expressed desire to testify and prevents his client from testifying, then counsel acts deficiently. *See United States v. Mullins*, 315 F.3d 449, 455 (5th Cir. 2002). Nevertheless, the defendant still must demonstrate a reasonable probability of a different result in light of his proposed testimony. *Id.* at 456.

2

> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

### C.     Sufficiency of the Evidence

A federal habeas petition warrants relief on a challenge to the sufficiency of the evidence only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). The relevant question in conducting such a review is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)). The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Id.* at 318.

The Court of Appeals of Virginia aptly explained the abundant evidence of King's guilt as follows:

> During the early morning hours of May 11, 2014, a fire partially burned the residence (the residence) of appellant's sister, the victim. Appellant had also once resided in the house, but he was evicted in August 2013. In addition, a protective order was in effect, prohibiting appellant from being at the residence when the victim was there. The victim stated she obtained the protective order after appellant beat her with a bat. She also stated her relationship with appellant was "extremely strained" after the protective order was issued. The victim was at the residence on the date of the fire, and her car was parked in the driveway all day.
> The victim testified that on the date of the incident, her son replaced a storm door on the room where appellant had once resided. The victim's son left in the yard the discarded storm door and the cardboard box in which the new door was packaged. The fire started in the early morning hours of the next day, and it was located on a wall to the room where appellant had resided. The victim's son testified that part of the cardboard box was missing when he saw it after the fire

had been extinguished. Evidence was also presented that a fuel oil tank was located next to the residence and the victim used oil to heat the residence.

Michael King, the brother of appellant and the victim, testified appellant was upset about being evicted from the residence. King also stated that appellant had repeatedly said, "If they ever kick me out of this house, I'm going to burn it down." King testified appellant said that if he could not have the house, then "nobody would." King stated appellant lived in several locations after the eviction, but all of the locations were within one mile of the residence. Appellant either walked or rode a bicycle for transportation.

Robert Henche testified he saw appellant on the evening of May 10, 2014 and appellant was upset and crying. Henche testified appellant said his nephew had removed some of his belongings from the residence. Henche stated appellant was drinking alcohol and he wore white sneakers.

David Beasley testified appellant was staying in a "dog house" on Beasley's property located about four houses away from the residence. Beasley testified he heard the fire trucks on the night of the incident and he found appellant asleep in the dog kennel. He told appellant the fire trucks went to the residence. Beasley stated that appellant asked him to wash his clothes and Beasley did so. However, Beasley did not wash appellant's shoes. Beasley stated appellant only had "one set of clothes."

Assistant Fire Marshal James Mullen described the fire damage to the residence as depicted in the photographs that were admitted into evidence. He testified the residence had damage on a back corner and the crawl space nearby. He took a soil sample from underneath the crawl space to analyze for a possible accelerant. Mullen took additional soil samples on May 13, 2014 and May 15, 2014. He stated that on May 13, 2014, the only thing that had changed at the site was that plywood was placed over the windows.

The May 13, 2014 soil sample contained gasoline, and the May 15, 2014 soil sample contained a heavy petroleum distillate which can be found in home heating oil. The tops of appellant's white sneakers were analyzed and contained a mixture of gasoline and a heavy petroleum distillate. The forensic scientist analyzed a new, control pair of similar shoes and ruled out the possibilities that heavy petroleum distillates were inherent to the shoe or were a part of the shoe manufacturing process. The forensic scientist also ruled out that kerosene was the heavy petroleum distillate.

Appellant told Mullen he resented being "kicked out" of the residence during the winter and not being allowed to see his dying mother who had also resided there. Appellant told Mullen he was on the property of the residence on May 11, 2014 and he had touched the discarded storm door.

An independent fire investigator opined that an accelerant was used to start the fire. He also eliminated malfunctioning electrical wiring as a source of ignition.

A recording of several phone calls made by appellant while he was in jail was played for the trial court.

(ECF No. 12–1, at 2–3.)

4

The foregoing evidence amply supported the Circuit Court's finding beyond a reasonable doubt that King committed the charged offenses:

> [T]he evidence showed appellant was upset about being evicted from the residence and he had made threats to burn the dwelling if he was ever evicted. On the date of the offense, appellant consumed alcohol and he was upset because he believed his personal items were removed from the residence. Appellant admitted he was on the property on the date of the offense. The trial court noted that, importantly, it was the top side of appellant's shoes that contained the gasoline and the petroleum distillate. In addition, the evidence showed that the shoes were not washed by Beasley when he washed appellant's clothing. Furthermore, the evidence showed the victim's car was parked in the driveway and she was at the residence all day and at the time the fire was started. From the evidence presented, the trial court could conclude appellant was the person who started the fire and appellant knew the victim was at the residence when he was on the property.

(*Id.* at 4.)

"[V]iewing the evidence in the light most favorable to the prosecution," a rational trier of fact easily could have found beyond a reasonable doubt that King started the fire at the residence and knew his sister was home at the time the fire started. *Jackson*, 443 U.S. at 319 (citing *Johnson*, 406 U.S. at 362). Therefore, it is RECOMMENDED that King's claim be DISMISSED.

**D.    King's Other Submissions**

In King's Response to Respondent's Motion to Dismiss, King repeatedly references testimony that he provided at the hearing in the Circuit Court with respect to his claim that his attorney prevented him from testifying. As King did not testify at his trial, his testimony is irrelevant to his present claim that insufficient evidence was presented *at trial* to sustain his convictions.

King also has submitted sworn declarations from Michael King (ECF No. 22, at 3–4) and from Ella M. Meadow (*id.* at 5). King fails to explain and the Court fails to discern how these declarations are relevant to his present claim that the evidence presented at his trial was

5

insufficient.³ King cannot add new claims by a passing reference in these or his other submissions.⁴ *See Snyder v. United States*, 263 F. App'x 778, 779–80 (11th Cir. 2008) (refusing to consider petitioner's statement in a reply brief as an attempt to amend his § 2255 motion to add a new claim); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 847 F. Supp. 2d 843, 851 n.9 (E.D. Va. 2012); *Equity in Athletics, Inc. v. Dep't of Educ.*, 504 F. Supp. 2d 88, 111 (W.D. Va. 2007) (citations omitted) (explaining that "new legal theories must be added by way of amended pleadings, not by arguments asserted in legal briefs"). Therefore, to the extent that King seeks to add any new claims in his responses to the Motion to Dismiss, the new claims will receive no further consideration in this action.

---

³ King apparently submitted these declarations to bolster his theory that the fire started from an electrical malfunction. Michael King swears that the circuit for the room where the fire started often became overloaded. (ECF No. 22, at 3.) Ms. Meadow, who lived near the residence, swears that the electrical systems in the neighborhood are not up to code and she had heard of an appliance sparking merely when the appliance was plugged into an outlet. (*Id.* at 5.) To the extent King suggests that his counsel was deficient for failing to elicit this testimony, he fails to demonstrate prejudice. Richard T. Chance, an expert in the origins and causes of fires testified that he "examined the wiring and found no evidence of shorts, marking or anything that would indicate there was an electrical fire." (Mar. 18, 2015 Tr. 142.) Rather, Mr. Chance opined that the fire was started by someone using accelerants. (Mar. 18, 2015 Tr. 145.)

Michael King also tried to offer an innocent explanation for the accelerants found on his brother James King's shoes. Michael swears that in the days before the fire James had used gas, kerosene, and other petroleum-based fluids to clean items. (ECF No. 22, at 4.) Given the abundant circumstantial evidence indicating James King started the fire, it is hardly likely that evidence of this ilk would have altered the outcome of the trial.

⁴ King submitted a document entitled "Addendum Testimony," wherein he appears to complain that the trial judge bowed his head and prayed before finding King guilty. (ECF No. 25.)

E.  **Conclusion**

Accordingly, it is RECOMMENDED that the Amended Motion to Dismiss (ECF No. 14) be GRANTED, the § 2254 Petition be DENIED, the action be DISMISSED, and a certificate of appealability be DENIED. It is further RECOMMENDED that the original Motion to Dismiss (ECF No. 10) be DENIED AS MOOT, that the Motion for Final Order Judgment against Respondent (ECF No. 17) be DENIED, that the Motion for Order that Petitioner Be Paid Restitution for Wrongful Conviction (ECF No. 23) be DENIED, and Motion for Court Order (ECF No. 27) be DENIED.

King is advised that he may file specific written objections to the Report and Recommendation within fourteen (14) days of the date of entry hereof. Such objections should be numbered and identify with specificity the legal or factual deficiencies of the Magistrate Judge's findings. *See* Fed. R. Civ. P. 72(b). Failure to timely file specific objections to the Report and Recommendation may result in the dismissal of his claims, and it may also preclude further review or appeal from such judgment. *See Carr v. Hutto*, 737 F.2d 433, 434 (4th Cir. 1984).

The Clerk is DIRECTED to send a copy of this Report and Recommendation to King and counsel for Respondent.

It is so ORDERED

/s/ _____
Roderick C. Young
United States Magistrate Judge

Date: January 15, 2020
Richmond, Virginia

7